**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10606
Telephone: (914) 874-0708
Facsimile: (212) 989-9163
Email: pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
Julia K. Venditti (State Bar No. 332688)
Joshua B. Glatt (State Bar No. 354064)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: jvenditti@bursor.com
jglatt@bursor.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CAROLINE WONG, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LASERAWAY, LLC,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff Caroline Wong ("Plaintiff") brings this action on behalf of herself and all others similarly situated against LaserAway, LLC ("Defendant" or "LaserAway"). Plaintiff makes the following allegations based upon her personal knowledge and own acts and experiences, and upon information and belief as to all other matters, including investigation conducted by Plaintiff's counsel.

## NATURE OF THE ACTION

1. Plaintiff brings this putative class action pursuant against Defendant to secure redress for their violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227, *et seq*.

2. To promote their services, Defendant engages in aggressive text message marketing campaigns to consumers with no regard for their rights under the TCPA. Defendant continues to send text messages to consumers even after they opt out from Defendant's messages.

3. Specifically, Defendant has engaged in a pattern of unlawful telemarketing by targeting Plaintiff and the proposed Class (the "Class," defined below) with unsolicited telephone solicitations, causing widespread annoyance and harm, in violation of the TCPA, including by failing to maintain the "minimum standards" for statutorily required "procedures for maintaining a list of persons who request not to receive" marketing text messages, in violation of 47 C.F.R. § 64.1200(d).

4. Through this action, Plaintiff seeks injunctive relief to halt Defendant's unlawful conduct, which has resulted in the intrusion upon seclusion, invasion of privacy, harassment, aggravation, and disruption of the daily life of Plaintiff and the Class members.

5. Plaintiff also seeks statutory and treble damages on behalf of herself and the members of the Class, and any other available legal or equitable remedies.

## PARTIES

6. Plaintiff Caroline Wong is a citizen of California and a resident of Concord, California. At all times relevant hereto, Plaintiff was, and continues to be, the sole subscriber of the residential telephone number ending in 7868 (the "7868 Number") that received Defendant's text message solicitations. Plaintiff received the text messages while in Concord, California.

7. Defendant LaserAway, LLC ("Defendant" or "LaserAway") is a California corporation headquartered in Beverly Hills, California and incorporated in California.

8. Defendant has done business in and throughout California and the United States at all times during the Class Period. At all relevant times, acting alone or in concert, Defendant provided its services to consumers in California and the United States. At all relevant times, acting alone or in concert with others, Defendant formulates, directed, controlled, had the authority to control, and/or participated in the acts and practices set forth in this Complaint.

9. Plaintiff reserves the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendant who has knowingly and willfully aided, abetted, and/or conspired in the unlawful conduct alleged herein.

## JURISDICTION AND VENUE

10. This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action arises under the TCPA.

11. This Court has personal jurisdiction over Defendant, and venue is proper in this District, because Defendant directs, markets, and provides its business activities to consumers in this District, and because Defendant's authorized text messaging/marketing scheme was directed by Defendant to consumers (including Plaintiff) in this District. Specifically, Defendant directed unsolicited text messages to Plaintiff in this District, where she resides. *See Luna v. Shac, LLC*, 2014 WL 3421514, at *4 (N.D. Cal. July 14, 2014) ("When [Defendant] intentionally sent unsolicited text messages advertising Sapphire to California cell phone numbers, which conduct gave rise to this litigation, it purposefully directed its activity to California such that [Defendant] is reasonably subject to the personal jurisdiction of this Court."); *see also Barton v. Real Innovation Inc.*, 792 F. Supp. 3d 1195, 1204 (W.D. Wash. 2025) ("Plaintiff alleges that the Defendants are subject to jurisdiction in this Court because they directed phone calls to Plaintiff in Washington, where he resides. Numerous courts have held that a telemarketer who makes phone calls into the forum state is subject to specific personal jurisdiction there as to TCPA claims arising from those calls, at least when the phone number is registered in the forum state. … The Court finds that this is

sufficient to establish personal jurisdiction at the pleading stage ….") (citations omitted); *accord Ott v. Mortg. Invs. Corp. of Ohio*, 65 F. Supp. 3d 1046, 1057-1059 (D. Or. 2014). Plaintiff also unsuccessfully requested to be removed from Defendant's messaging list from this District. Additionally, Plaintiff's telephone number has an area code that specifically coincides with locations in this District. *See Barton*, 792 F. Supp. 3d at 1204 ("An area code in the forum state can serve as an indicator to a defendant that they are transacting business in the forum ….").

## FACTUAL ALLEGATIONS

### A. Background On The TCPA

12. Plaintiff brings this case to protect her privacy rights; namely, the right to be left alone from unwanted telemarking communications.

13. Plaintiff brings this suit in an effort to stop companies, like Defendant, from sending text messages to her and putative class members' phones after they had expressly requested that Defendant cease from doing so.

14. In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the Telephone Consumer Protection Act ("TCPA") into law, to protect consumers' privacy rights; namely, the right to be left alone from unwanted telemarketing communications. A leading sponsor of the TCPA described unwanted telemarketing communications as "the scourge of modern civilization." 137 Cong. Rec. 30821 (1991); *see also Facebook, Inc. v. Duguid*, 592 U.S. 395, 399 (2021) ("In 1991, Congress passed the TCPA to address 'the proliferation of intrusive, nuisance calls' to consumers and businesses from telemarketers.") (citation omitted); *id.* at 408 (noting TCPA's aim to curb "intrusive telemarketing practices").

15. More specifically, through its enactment of the TCPA, Congress sought to protect consumers from intrusive and unwanted robocalls and text messages that invade privacy and disrupt daily life. *See, e.g.*, *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) ("The TCPA establishes the substantive right to be free from certain types of phone calls and texts absent consumer consent. Congress identified unsolicited contact as a concrete harm, and gave consumers a means to redress this harm. … Congress aimed to curb telemarketing calls to which consumers did not consent by prohibiting such conduct and creating a statutory scheme

giving damages if that prohibition was violated."); *Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 986 (9th Cir. 2023) ("Congress granted residential phone subscribers the right to create a private line, free from unsolicited calls and intrusive texts."); *accord*; *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1117–18 (9th Cir. 2022); *Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1222 (9th Cir. 2022); *see also Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016).

16. The TCPA proscribes abusive telemarketing practices by affording special protection for people who request to be placed on a company's internal do not call list, as detailed below. *See* 47 C.F.R. § 64.1200(d). Moreover, the TCPA provides that each person who receives more than one call on their cell phone after requesting to be placed on the company's internal do not call list is entitled to recover a penalty of $500 per call. *See* 47 U.S.C. § 227(c)(5) ("A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may … bring … (A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation, (B) an action … to receive up to $500 in damages for each such violation, whichever is greater, or (C) both such actions.").

17. Under the TCPA's implementing regulations, FCC guidance, and well-settled case law, text messages constitute "calls" within the meaning of the TCPA. *See* 47 C.F.R. § 64.1200(e) ("The rules set forth in paragraph … (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing … text messages to wireless telephone numbers …."); *id.* § 64.1200(a)(9) ("[T]he term 'call' includes a text message, including a short message service (SMS) call."); *see also Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1041–42 (9th Cir. 2017) ("[T]he Federal Communications Commission (FCC), the agency implementing the TCPA, has interpreted the TCPA to 'encompass[ ] both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls,' which are generally referred to as text messages.") (citing *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014, 14115 (July 3, 2003)); *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of [the TCPA].") (citation omitted); *accord Gomez v.*

*Campbell-Ewald Co.*, 768 F.3d 871, 874 (9th Cir. 2014); *Satterfield v. Simon & Schuster, Inc.*, 569. F.3d 946, 954 (9th Cir. 2009) (holding that the FCC's interpretation that a text message is a "call" under the TCPA is reasonable). Thus, text messages are calls and are subject to the TCPA.

18. Receiving unwanted telemarketing communications is an issue that most people, like Plaintiff, frequently face. A 2023 tally found that Americans received 415,172,654 spam texts per day that year.[1] Text spammers targeted California more than any other state in September 2023, sending approximately 1,315,688,592 spam texts to Californians during the same time frame.[2] While these 2023 figures are already astronomical, there was a significant increase in overall scam and telemarketing messages sent and received in 2025 as compared to prior years. Indeed, while Americans received a total of approximately 12.4 billion spam texts in September 2023, they received approximately "***19.2 billion spam texts*** in September 2025," which is "nearly ***63 spam texts*** for every person in the U.S."[3]

19. These text messages are not only intrusive and harmful to consumers' privacy interests, but they are expensive. Indeed, scam texts cost Americans over $326 million in 2022,[4] and those costs have necessarily risen over the last few years, as the number and frequency of spam text messages sent to and received by consumers has increased.

20. To combat this issue, the TCPA requires that a company implement certain minimum policies and procedures prior to making telemarketing calls, which include texts. These policies and procedures include, in relevant part, maintaining a written policy, available upon demand, for maintaining a do-not-call list; training personnel engaged in telemarketing; and recording and honoring do-not-call requests when made, as follows:

> (d) No person or entity shall initiate … any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to

---

[1] *See* Text-Em-All, *2023 Spam Text Statistics: Are Spam Texts On The Rise?* (Oct. 19, 2023) ("*2023 Spam Text Statistics*"), https://www.text-em-all.com/blog/spam-text-statistics.

[2] *See id.*

[3] Robokiller, *How many robotexts are Americans getting?*, https://www.robokiller.com/spam-text-insights (last accessed Oct. 14, 2025) (emphasis in original).

[4] *See* Text-Em-All, *2023 Spam Text Statistics*, *supra*.

> receive such calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:
>
> > (1) ***Written policy.*** Persons or entities making … calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
> >
> > (2) ***Training of personnel.*** Personnel … who are engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
> >
> > (3) ***Recording, disclosure of do-not-call requests.*** If a person or entity making … any call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making such calls (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. …
> >
> > (4) ***Identification of callers and telemarketers.*** A person or entity making … any call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges. …
> >
> > (6) ***Maintenance of do-not-call lists.*** A person or entity making … any call for telemarketing purposes must maintain a record of a consumer's request not to receive further calls. A do-not-call request must be honored for 5 years from the time the request is made.

47 C.F.R. § 64.1200(d)(1)-(4), (6); *see also id.* § 64.1200(e) ("The rules set forth in paragraph … (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing … text messages to wireless telephone numbers …").

21. Thus, when companies like Defendant receive a request to stop sending text messages to a recipient of such messages, they are obligated to place the person making the stop request on the company's internal do-not-call list, and to no longer send text messages to the person. *See* 47 C.F.R. § 64.1200(d)(3) and (d)(6).

22. Furthermore, the private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. *See* 47 U.S.C. § 227(c)(5). For example,

while the Federal Communications Commission ("FCC") levied more than $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount.[5] Thus, the Congressional goal of deterrence relies heavily on TCPA enforcement by private consumers.

**B. Plaintiff and Class Members Received Numerous Text Messages and Phone Calls Despite Requesting to Defendant to Stop**

23. At all times relevant hereto, Plaintiff owned a cell phone, the number for which was (415) XXX-7868.

24. At all times relevant hereto, Plaintiff used the aforementioned cell phone primarily for residential purposes.

25. Defendant engaged in a telemarketing campaign directed toward Plaintiff in furtherance of promoting its treatments and services.

26. Beginning in at least November 25, 2024, Defendant sent or caused to be sent multiple telemarketing text messages to Plaintiff's cellular telephone number ending in 7868 from multiple numbers operated by Defendant and/or Defendant's agents.

27. Defendant owns and operates a health care company that specializes in a full suite of aesthetic treatments including laser hair removal, tattoo removal, skin rejuvenation, body contouring, skin tightening, injectables, and skin care products.

28. Defendant's website offers a questionnaire for users before recommending specific services. After completing the questionnaire, Defendant requests the consumer's phone number. At the end of the questionnaire, website users are presented with this screen:

[5] The Wall Street Journal, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790.* (Mar. 28, 2019), *available at* https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.




29. Although is miniscule font, Defendant explains that "[b]y providing your information in the previous screens and clicking the SUBMIT button below, you agree to receive … recurring calls and texts, which may be made using an automatic telephone dialing system and/or an artificial or prerecorded voice."[6]

30. As the "Text Terms" explain, "[t]o stop receiving text messages from the LaserAway text messaging program, text STOP to the telephone number or five-digit short code for the text messaging program from which you no longer wish to receive messages (i.e., the number from which its text messages are being sent)." Unfortunately, it is not that simple.

31. Defendant texts and calls potential consumers—even after they have affirmatively requested the text messages cease.

[6] There is no button labeled "Submit." Only "GET MORE INFO" as shown above.

*Figure 1*




*Figure 2*




*Figure 3*




32. As demonstrated by the above screenshots, the purpose of Defendant's text messages was to solicit the sale of consumer goods and services.

33. Defendant did not honor Plaintiff's request to opt out of text message solicitations. Indeed, Plaintiff attempted to opt out of Defendant's text message solicitations by telling Defendant to stop. Defendant continued to send messages to Plaintiff.

34. Given the capabilities of modern telemarketing technology, Defendant has the ability to immediately comply with Plaintiff's opt-out requests.

35. By failing to immediately record and honor Plaintiff's do-not-call request and continuing to initiate telemarketing telephone solicitations after that request, Defendant failed to honor Plaintiff's do-not-call request "within a reasonable time." *See Lourie v. Papa John's Int'l, Inc.*, No. 1:23-CV-4320-MHC, 2024 U.S. Dist. LEXIS 119679, at *9-10 (N.D. Ga. June 25, 2024) ("Because the Court must accept as true [plaintiff's] allegation that Defendant has the capability of

immediately complying with Plaintiff's [do-not-call] request, at this stage of the dispute, the Court must infer that Defendant could have immediately complied with the request prior to the transmittal of the two telemarketing text messages in the week following Lourie's request.") (internal citations omitted).

36. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(d), provides that "[n]o person or entity shall initiate … any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards: (1) Written policy. … (2) Training of personnel. … (3) Recording, disclosure of do-not-call requests. … (6) Maintenance of do-not-call lists."); *see also* 47 C.F.R. § 64.1200(e) ("The rules set forth in paragraph … (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing … text messages to wireless telephone numbers ….").

37. Defendant failed to place Plaintiff on an internal do-not-call list after Plaintiff's explicit opt-out instruction.

38. As demonstrated by the above screenshots, Defendant does not honor reasonable consumer requests to opt-out of text message solicitations, in violation of 47 C.F.R. § 64.1200(d)(3) and (d)(6), among other provisions of the TCPA. *See* 47 C.F.R. § 64.1200(d)(3) ("Persons or entities making such calls (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made."); *id.* § 64.1200(d)(6) ("A do-not-call request must be honored for 5 years from the time the request is made.").

39. Defendant's failure to honor Plaintiff's do-not-call request strongly suggests that Defendant also does not meet the other "minimum standards" for the "procedures for maintaining a list of persons who request not to receive" that telemarketers must maintain, such as: (1) a written policy for maintaining an internal do-not-call list, as required by 47 C.F.R. § 64.1200(d)(1); (2) informing and training its personnel engaged in telemarking on the existence and use of any internal do-not-call list, as required by Section 64.1200(d)(2); (3) "record[ing] the request and

plac[ing] the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made," as required by Section 64.1200(d)(3); and (4) maintaining a record of a consumer's request not to receive further texts, as required by Section 64.1200(d)(6).

40. Indeed, Defendant affirmatively promised it has removed Plaintiff from receiving any text messages after she had requested. This appears to be untrue as Defendant seemingly made Plaintiff's phone number available for its agents to continue texting her with solicitations from multiple different employees using different phone numbers. This shows Defendant likely does not have any procedures in place to train staff or otherwise maintain an internal list from which its agents must consult.

41. Defendant's refusal to honor Plaintiff's opt-out request demonstrates that Defendant does not have a written policy, available upon demand, for maintaining a do-not-call list, and that Defendant has not instituted procedures for maintaining a list of persons who request not to receive text messages from Defendant, in violation of 47 C.F.R. § 64.1200(d)(1).

42. Defendant's refusal to honor Plaintiff's opt-out request also demonstrates that Defendant does not provide training to its personnel engaged in telemarketing on the use and existence of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2). The precise details regarding their lack of training are solely within Defendant's knowledge and control.

43. Additionally, Defendant's refusal to honor Plaintiff's opt-out request demonstrates that Defendant does not maintain a standalone do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(3). The precise details regarding their failure to maintain a do-not-call list are solely within Defendant's knowledge and control.

44. Indeed, it is implausible that Plaintiff would have continued receiving solicitations after a do-not-call request if Defendant had maintained the procedures required by 47 C.F.R. § 64.1200.

45. Defendant's text messages were transmitted to Plaintiff's residential cellular telephone, and within the time frame relevant to this action.

46. Defendant sent the subject texts within this judicial district and, therefore, Defendant's violations of the TCPA occurred within this district. Upon information and belief, Defendant caused other text messages to be sent to individuals residing within this judicial district.

47. Defendant's texts were not made for an emergency purpose or to collect on a debt pursuant to 47 U.S.C. § 227(b)(1)(B).

48. Plaintiff has no existing business relationship with Defendant. *See* 47 C.F.R. § 64.1200(f)(5). Further, to the extent that Defendant ever had any business relationship with Plaintiff, any such relationship was expressly terminated on at least November 5, 2024, when Plaintiff first responded to Defendant's text message with "Stop." *See* 47 C.F.R. § 64.1200(f)(5)(i) ("The subscriber's seller-specific do-not-call request, as set forth in paragraph (d)(3) of this section, terminates an established business relationship for purposes of telemarketing and telephone solicitation even if the subscriber continues to do business with the seller.").

49. Plaintiff is the subscriber and sole user of the 7868 Number and is financially responsible for phone service to the 7868 Number.

50. The text messages originated from at least telephone numbers (310) 356-3728, (510) 999-5469, and (661) 230-7393. The numbers, upon information and belief, are owned and operated by Defendant or used to send messages on Defendant's behalf.

51. Upon information and belief, Defendant has access to outbound transmission reports for all text messages sent advertising/promoting its services and goods. These reports show the dates, times, target telephone numbers, and content of each message sent to Plaintiff and the Class members. Defendant also has access to text message logs showing Plaintiff's and the Class members' inbound opt-out requests.

52. Defendant's unwanted telemarketing text messages caused Plaintiff and Class members actual harm, including statutory damages, invasion of privacy, aggravation, annoyance, intrusion on seclusion, and violation of their statutory privacy rights. Defendant's text messages also inconvenienced Plaintiff and Class members and caused disruption to their daily lives.

53. Defendant's unwanted telemarketing text messages caused Plaintiff actual harm. Specifically, Plaintiff estimates that she has wasted fifteen to thirty seconds reviewing each of

Defendant's unwanted messages. Each time, Plaintiff had to stop what he was doing to either retrieve his phone and/or look down at the phone to review the message.

54. Next, Plaintiff wasted her personal time locating, retaining, and working with her counsel for this case to stop Defendant's unwanted text messages to enforce her rights. In all, Defendant's violations of the TCPA caused Plaintiff to waste her time in addressing and attempting to stop Defendant's solicitations. Additionally, the deliberate nature of Defendant's violations, continuing to send messages after his express opt-out requests, caused Plaintiff significant additional time loss and frustration.

55. Because Plaintiff and Class members received more than one text message in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200(d), as described above, Defendant violated 47 U.S.C. § 227(c)(5).

56. As a result of Defendant's violations of 47 C.F.R. § 64.1200(d), Plaintiff and Class members are entitled to injunctive relief and an award of actual monetary loss or up to $500.00 in statutory damages per violation, whichever is greater, for each and every negligent violation, pursuant to 47 U.S.C. § 227(c)(5). *See id.* ("A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—(A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation, (B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or (C) both such actions.").

57. As a result of Defendant's violations of 47 C.F.R. § 64.1200(d), Plaintiff and Class members are entitled to a treble damages of up to $1,500.00 for each and every knowing and/or willful violation, pursuant to 47 U.S.C. § 227(c)(5). *See id.* ("… If the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.").

**CLASS ALLEGATIONS**

58. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of Plaintiff and all others similarly situated.

59. Plaintiff brings this case on behalf of the Class defined as follows:

> All persons within the United States who, within the four years prior to the filing of this lawsuit, received two or more text messages within any 12-month period, from or on behalf of Defendant, regarding Defendant's goods, services, or properties, to said person's residential cellular telephone number, after communicating to Defendant that they did not wish to receive text messages by replying to the messages with "stop" or similar opt-out instruction.

60. Plaintiff reserves the right to modify the Class definition as warranted as facts are learned in further investigation and discovery.

61. Excluded from the Class are (1) Defendant, their officers, and/or directors; (2) the Judge and/or Magistrate to whom this case is assigned; (3) the Judge or Magistrate's staff and family; and (4) Plaintiff's counsel and Defendant's counsel. Defendant and their employees or agents are excluded from the Class.

62. ***Numerosity.*** While the exact number of members of the Class is unknown to Plaintiff at this time, and can only be determined by appropriate discovery, upon information and belief, members of the Class is greater than 40. Members of the Class may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

63. ***Existence and Predominance of Common Questions of Law and Fact.*** There are numerous questions of law and fact common to members of the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the members of the Class are:

(a) Whether Defendant sent text messages to Plaintiff and the Class Members;

(b) Whether Defendant continued to send text message solicitations after opt-out requests;

(c) Whether Defendant failed to honor Plaintiff's and the Class Members' opt-out requests;

(d) Whether Defendant maintain an internal do-not-call list and instructs their employees on how to use the list;

(e) Whether Defendant maintains the required policies and procedures under section 64.1200; and

(f) Whether Defendant is liable for damages, and the amount of such damages.

64. The common questions in this case are capable of having common answers, and Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

65. ***Typicality.*** Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories as each member of the Class received Defendant's solicitation text message, replied with "Stop," and continued receiving text messages.

66. ***Adequacy.*** Plaintiff will fairly and adequately represent and protect the interests of the Class as required by Fed. R. Civ. P. 23(a)(4). Plaintiff is an adequate representative of the Class because she has no interests adverse to the interest of the Members of the Class. Plaintiff is committed to the vigorous prosecution of this action, and, to that end, has retained skilled and experienced counsel.

67. ***Superiority.*** A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are likely substantial, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

68. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

**COUNT I**
**Violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d)**
**(On Behalf of Plaintiff and the Class)**

69. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

70. Plaintiff brings this claim individually and on behalf of the Class against Defendant.

71. In pertinent part, 47 C.F.R. § 64.1200(d) provides:

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:
>
> (1) Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscribers name, if provided, and telephone number on the do-not-call list ***at the time the request is made***. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

72. Defendant is subject to the requirement of Section (d) because it applies to "any person or entity making telephone solicitations or telemarking calls or text messages to wireless telephone numbers[.]" *Id.* at (e).

73. 47 C.F.R. § 64.1200(10) provides that "[a] called party may revoke prior express consent … to receive … text messages … by using any reasonable method to clearly express a desire not to receive further … text messages from the … sender." "Any revocation request made

… using the words 'Stop,' … sent in reply to an incoming text message … constitutes a reasonable means per se to revoke consent." *Id.* "If a called party uses any such method to revoke consent, that consent is considered definitively revoked and the caller may not send additional robocalls and robotexts. If a reply to an incoming text message uses words other than 'stop,' … the caller must treat that reply text as a valid revocation request if a reasonable person would understand those words to have conveyed a request to revoke consent." *Id.*

74. Plaintiff and the Class Members are residential telephone subscribers who received more than one text message made for purposes of telemarketing or solicitation from Defendant, who has failed to implement the requisite procedures and personnel training as demonstrated by its repeated failure to honor opt-out requests.

75. "Should the text initiator choose to use a texting protocol that does not allow reply texts, it must provide a clear and conspicuous disclosure on each text to the consumer that two-way texting is not available due to technical limitations of the texting protocol, and clearly and conspicuously provide on each text reasonable alternative ways to revoke consent." *Id.* Defendant fails to state that the texting protocol does not allow reply texts.

76. Plaintiff and the Class members made requests to Defendant not to receive texts from Defendant.

77. Plaintiff and the Class Members revoked any consent they may have provided Defendant by responding with "Stop" or similar opt-out instructions.

78. Defendant continued to send text messages to Plaintiff and the Class Members to harass them into using Defendant's services.

79. Defendant failed to honor Plaintiff's and the Class Members' opt-out requests.

80. Defendant's refusal to honor opt-out requests is indicative of Defendant's failure to implement a written policy for maintaining a do-not-call list and/or use it.

81. Defendant has not instituted procedures for maintaining a list of persons who requested not to receive telemarketing calls or text messages or otherwise comply with the requirements for maintaining and following such a list.

82. Defendant does not have a written policy, available upon demand, for maintaining a do-not-call list and properly abiding by it.

83. The details and specific facts regarding Defendant's failure to maintain the required policies and procedures, as well as personnel training, are solely within Defendant's knowledge and possession.

84. Defendant has violated 47 C.F.R. § 64.1200(d) by failing to honor opt-out requests, failing to maintain the required policies and procedures, and failing to train its personnel engaged in telemarketing.

85. Pursuant to section 227(c)(5) of the TCPA, Plaintiff and the Class members are entitled to an award of $500.00 in statutory damages for each and every negligent violation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action pursuant to the Federal Rules of Civil Procedure on behalf of the Class as defined above, appointing Plaintiff as the representative of the Class, and appointing Plaintiff's counsel as Class Counsel;

b) An award of statutory and/or treble damages for Plaintiff and each member of the Class as applicable under the TCPA;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to comply with the TCPA, including all applicable implementing regulations;

e) For an award of punitive damages for Defendant's willful and repeated violations; and

f) Such further and other relief as the Court deems necessary.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated: January 16, 2026

**BURSOR & FISHER, P.A.**

By: *\/s/ Philip L. Fraietta*
Philip L. Fraietta

Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10606
Telephone: (914) 874-0708
Facsimile: (212) 989-9163
Email: pfraietta@bursor.com

Julia K. Venditti (State Bar No. 332688)
Joshua B. Glatt (State Bar No. 354064)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: jvenditti@bursor.com
jglatt@bursor.com

*Attorneys for Plaintiff*