United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CAROLINE WONG,
Plaintiff,

v.

LASERAWAY, LLC,
Defendant.

Case No. 26-cv-00529-RS

**ORDER DENYING MOTION TO COMPEL ARBITRATION**

I. INTRODUCTION

On behalf of herself and a putative class, plaintiff Caroline Wong alleges defendant LaserAway owns and operates a health care company offering "a full suite of aesthetic treatments including laser hair removal, tattoo removal, skin rejuvenation, body contouring, skin tightening, injectables, and skin care products." LaserAway's website presents a questionnaire for prospective customers to fill out before it recommends specific services. Wong apparently provided her telephone number to LaserAway in response to that questionnaire. Wong contends, however, that LaserAway violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227, *et seq.* by continuing to send repeated text marketing messages to her phone number even after she communicated a desire not to continue receiving them.

LaserAway moves to compel arbitration of Wong's claims. LaserAway contends Wong entered into a binding agreement to arbitrate any disputes she might have with LaserAway related to her use of the website because she accepted LaserAway's "Terms and Conditions"—which

included an arbitration clause—when she clicked a button labeled "GET MORE INFO" on the website. LaserAway's motion has been submitted without argument, pursuant to Civil Local Rule 7-1(b). Because LaserAway has not shown an agreement to arbitrate was formed, the motion to compel arbitration must be denied.

## II. DISCUSSION

To form a contract under California law, there "must be actual or constructive notice of the agreement and the parties must manifest mutual assent." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 512–13 (9th Cir. 2023). The "principle of knowing consent" required to establish contract formation "applies with particular force to provisions for arbitration," *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 566 (9th Cir. 2014), and with equal force to contracts formed online, *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855–56 (9th Cir. 2022).

In the online context, internet contracts are classified "by the way in which the user purportedly gives their assent to be bound by the associated terms" and generally fall on a spectrum ranging from "clickwrap" to "browsewrap." *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024) (citing *Sellers v. JustAnswer* LLC, 289 Cal. Rptr. 3d 1, 16 (Cal. 2021)); *see also Berman*, 30 F.4th at 856. "[C]lickwrap" agreements are agreements in which a website presents users with specified contractual terms on a pop-up screen and users must check a box explicitly stating "I agree" in order to proceed. *Berman*, 30 F.4th at 856.

At the other end of the spectrum, browsewrap agreements offer terms that are disclosed only through a hyperlink and the user supposedly manifests assent to those terms simply by continuing to use the website. *Id*. In the middle of the spectrum are sign-in wrap agreements, also known as "modified clickwrap agreement[s]," whereby a user is "notified of the existence of the website's terms of use and advise[d] that by making some type of affirmative act, often by clicking a button, she is agreeing to the terms of service." *Moyer v. Chegg, Inc.*, 2023 WL 4771181, at *4 (N.D. Cal. July 25, 2023).

The Terms of Service here is a modified sign-in or clickwrap agreement. Under California law, such an agreement may be an enforceable contract based on inquiry notice if "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Kroskey v. Elevate Labs, LLC*, 2025 WL 1507091, at *3 (N.D. Cal. May 27, 2025) (citing *Berman*, 30 F.4th at 856).

LaserAway insists no fewer than three recent cases in this district compel a conclusion that this case must be ordered to arbitration. Those cases, however, demonstrate LaserAway's motion must be denied. In *Vickers v. Allbirds, Inc*., 2026 WL 1484303 (N.D. Cal. May 27, 2026), the website stated: "By placing this order, you agree to our Terms of Service and understand our Privacy Policy." The court observed the advisal appeared "immediately below a 'Pay Now' button" and that "nothing about the design of the single-column checkout page deemphasizes the advisal or distracts users' attention away from it." 2026 WL 1484303, at *1 (N.D. Cal. May 27, 2026) In *Blackburn v. ClassPass USA LLC*, 2026 WL 962734 (N.D. Cal. Apr. 9, 2026), the defendants' website advised, "[b]y clicking the Redeem now button, I agree to the Offer Terms and Terms of Use," which the court held sufficient to require arbitration. In *Kroskey*, consumers were expressly advised "[b]y creating your account, you agree to Balance's Terms & Conditions and Privacy Policy."

Here, LaserAway contends it provided clear and conspicuous notice of its terms and conditions because the hyperlink appeared on a screen with little other content, in a readable font. While Wong complains the font was unreasonably small and that the hyperlink was not set off in a contrasting color, the overall design may have been sufficient to give notice of the terms and conditions LaserAway was proposing. *See Kroskey*, ("the page here is free from clutter. . . . In the context of the clean and simple format of the page, the Court finds that a reasonably prudent internet user would see the notice and understand that the phrase "Terms & Conditions" was a hyperlink to the Terms of Service containing the Arbitration Clause.")

Even assuming LaserAway gave "reasonably conspicuous notice of the terms," however, it

United States District Court
Northern District of California

has not shown that Wong or other website visitors "unambiguously manifest" assent to those terms by clicking a button labeled "GET MORE INFO." "A user's click of a button can be construed as an unambiguous manifestation of assent only if the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement." *Berman*, 30 F.4th at 857. "[T]he notice must explicitly notify a user of the legal significance of the action she must take to enter into a contractual agreement." *Id*. at 858.

Inviting the users to "get more info" could reasonably be construed as an offer to provide additional information about LaserAway's products and services *prior* to forming any agreement. Indeed, the button might even be understood as a means for obtaining details of the "terms and conditions" prior to assenting to them. In any event, a button labeled "get more info" falls short of explicitly advising users that the act of clicking it will constitute assent to terms and conditions available through a hyperlink elsewhere on the page. The cases on which LaserAway relies, *Vickers, Blackburn,* and *Kroskey*, all clearly indicated that clicking on the buttons would represent agreement to the terms and conditions. The motion to compel arbitration is denied.

**IT IS SO ORDERED**.

Dated: July 15, 2026

RICHARD SEEBORG
United States District Judge